UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GREGORY MARTIN,

        Plaintiff,

v.                                   Case No. 1:12-cv-1030

                                         Hon. ROBERT HOLMES BELL

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/


# REPORT AND RECOMMENDATION

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of

a final decision of the Commissioner of the Social Security Administration (Commissioner) denying

his claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

        Plaintiff was born on November 29, 1962 (AR 136).[1]  He alleged a disability onset

date of January 5, 2009 (AR 136).  Plaintiff completed the 12th grade and had previous employment

as a truck driver, press operator and dock worker (AR 174, 208).  He identified his disabling

conditions as:  separated sternum; arthritis; strep infection complications; and depression (AR 168).

On November 2, 2011, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and

entered a decision denying benefits (AR 13-25).  This decision, which was later approved by the

Appeals Council, has become the final decision of the Commissioner and is now before the Court

for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-

step analysis:

> The Social Security Act requires the Secretary to follow a "five-step
> sequential process" for claims of disability.  First, plaintiff must demonstrate that she
> is not currently engaged in "substantial gainful activity" at the time she seeks
> disability benefits.  Second, plaintiff must show that she suffers from a "severe
> impairment" in order to warrant a finding of disability.  A "severe impairment" is one
> which "significantly limits . . . physical or mental ability to do basic work activities."
> Third, if plaintiff is not performing substantial gainful activity, has a severe
> impairment that is expected to last for at least twelve months, and the impairment
> meets a listed impairment, plaintiff is presumed to be disabled regardless of age,
> education or work experience.  Fourth, if the plaintiff's impairment does not prevent
> her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final
> step, even if the plaintiff's impairment does prevent her from doing her past relevant
> work, if other work exists in the national economy that plaintiff can perform, plaintiff
> is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations

caused by his impairments and the fact that he is precluded from performing his past relevant work

through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).

However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant

number of jobs in the economy that accommodate the claimant's residual functional capacity

(determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not

disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861

F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied

in social security disability cases."  *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d

716, 719 (W.D. Mich. 2007), citing  *Bailey v. Secretary of Health and Human Servs.*, No. 90-3265,

1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991).  "The proper inquiry in an application for SSI benefits

3

is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step.  At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 5, 2009 and met the insured status requirements of the Act through December 31, 2013 (AR 15).  At step two, the ALJ found that plaintiff had the following severe impairments: valvular heart disease; aortic aneurysm; postoperative sternal complications; major depressive disorder; obesity; and diabetes mellitus (AR 15), even though he had not listed some of these conditions on his initial application. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically Listings 4.10 (aneurysm of aorta or major branches), 9.08 (diabetes mellitus) and 12.04 (affective disorders) (AR 16-17).

The ALJ decided at the fourth step that plaintiff has the residual functional capacity (RFC):

> . . . to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant should avoid overhead reaching, climbing ladders or scaffolds, and kneeling or crawling.  The claimant should avoid exposure to unprotected heights, dangerous moving machinery, and occupational vibrations.  He is limited to simple tasks and occasional interaction with the public.

(AR 17-18).  The ALJ further found that plaintiff was unable to perform any past relevant work (AR 23).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, sedentary jobs in the national economy (AR 23-24).  Specifically, plaintiff could

4

perform the following jobs in the regional economy (Michigan): bench assembler (4,000 jobs); sorter (5,000 jobs); and parts checker (3,500 jobs) (AR 23-24). Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, at any time from January 5, 2009 (the alleged onset date) through November 2, 2011(the date of the decision) (AR 24-25).

### III. ANALYSIS

Plaintiff has raised three issues on appeal.

### A.      The ALJ failed to follow the treating physician rule.

Plaintiff contends that the ALJ did not give controlling weight to the opinions of his treating psychiatrist, Verle Bell, M.D. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). Under the regulations, "[t]reating-source opinions must be given

'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013), quoting 20 C.F.R. § 404.1527(c)(2).

An ALJ is not bound, however, by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773. In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip*, 25 F.3d at 287. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

By way of background, on October 11, 2009, plaintiff was admitted to Provena Mercy Medical Center in Aurora, Illinois, having been brought in as a suicide threat (slitting his wrists) (AR 394-97). Plaintiff was diagnosed with: major depressive disorder, recurrent, without psychosis; alcohol dependence; and opiate abuse (AR 394-97). Plaintiff was released on October 16, 2009 (AR 394-97). He was scheduled with the follow-up appointment with Dr. Bell and seen by clinicians at Pine Rest Christian Mental Health Services in October, November and December 2009 (AR 439-43).

On October 27, 2009, plaintiff visited Pine Rest "to have his care picked up since he just moved here from Illinois" (AR 432). At the time of this visit, plaintiff reported to Dr. Bell: that he was doing well on Prozac "with an occasional trazodone for sleep"; that he did not want to change anything; that his concentration was fine; that his motivation was fine; and that he moved

to Michigan because he and his wife of 13 years had split up (AR 432).  The doctor found that plaintiff: did not really have a concentration problem; had a pretty good vocabulary; was a voracious reader; and had no obsessions, panics or psychotic symptoms (AR 433).  The doctor found that plaintiff suffered from severe and transient depression, and gave him a Global Assessment of Functioning ("GAF") score of 65 (AR 432-33).  This score represented the doctor's subjective opinion that plaintiff suffered from "some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), p. 34.[2]

On April 2, 2010, Dr. Bell met with plaintiff for 25 minutes (AR 585).  According to Dr. Bell's notes, plaintiff "had a bunch of paperwork to fill out which we completed" (AR 585).  At that time, Dr. Bell noted that plaintiff was "feeling better on anxiety and depression" but that he still struggled with motivation, drive and energy (AR 585).  The doctor found that plaintiff was not currently suicidal or homicidal, but that he definitely had a flat affect and slow response time (AR 585).  During their meeting, Dr. Bell filled out a "Psychiatric/Psychological Impairment Questionnaire" for plaintiff which was prepared by plaintiff's attorney (AR 577-84).  In this

---

[2]  The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. *DSM-IV-TR*, pp. 32, 34.  The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms."  *Id*. at 32.  The GAF scale ranges from 100 to 1.  *Id.* at 34.  At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.*  At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death."  *Id.*

document, Dr. Bell diagnosed plaintiff as suffering from severe and transient depression (AR 577-84). The doctor assigned plaintiff a GAF score of 40, which represented the doctor's subjective opinion that plaintiff suffered from "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." *DSM-IV-TR*, p. 34.

The doctor checked off the following clinical findings to support his diagnosis: appetite disturbance with weight change (doctor noted loss of 10 pounds); mood disturbance (doctor noted depression); emotional lability; substance dependence (not checked off by doctor but noted as demonstrated by plaintiff's history); psychomotor retardation; feelings of guilt/worthlessness; difficulty thinking or concentrating; suicidal ideation or attempts; social withdrawal or isolation; decreased energy; intrusive recollections of a traumatic experience; persistent irrational fears (doctor noted agoraphobic and heights); generalized persistent anxiety; somatization unexplained by organic disturbance; and irritability (AR 578). The doctor listed plaintiff's primary symptoms as fluctuant depression with suicidal [sic], irritable, overwhelmed, explosions, poor sleep, decreased appetite, and crying for no reason (AR 579). The doctor noted that plaintiff had been hospitalized twice for his symptoms in July 1996 and October 2009 (AR 579). The form included a list of mental activities, which asked the doctor to rate plaintiff's ability ranging from "no evidence of limitation" to "markedly limited," the latter term being defined as a limitation which "effectively precludes the individual from performing the activity in a meaningful manner" (AR 580). Dr. Bell found that plaintiff was markedly limited in two areas, i.e., "the ability to perform activities within a schedule,

maintain regular attendance, and be punctual within customary tolerance" and "the ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" (AR 580-82). Dr. Bell concluded that plaintiff was incapable of tolerating even "low stress" work and that on average he would be absent from work more than three times a month due to impairments or treatment (AR 583-84).

One week later, on April 9, 2010, plaintiff was seen for a followup by a therapist at Pine Rest (AR 636). While plaintiff reported some recent suicidal ideation, he denied any plan or intent, noted that his moods had improved over the past week, and that he did not feel at risk for self harm behaviors (AR 636). The clinician informed plaintiff that he had not filled out paperwork related to plaintiff's alleged disability because the clinician viewed plaintiff's problems "as more of a physical health issue than a psychiatric disability" (AR 636).

On April 20, 2010, plaintiff's "outpatient closing summary" at Pine Rest stated that he showed gradual improvement in moods over the course of therapy, though he continued to experience periods of increased depression (AR 635). Plaintiff's diagnosis on that date was minor depressive disorder, in partial remission, history of alcohol dependence, and personality disorder NOS (AR 635). The clinician noted that plaintiff showed gradual improvement in moods over the course of therapy but continued to experience periods of increased depression (AR 635). The clinician also noted that plaintiff had chronic pain and heart problems (AR 635). At that time, the clinician assigned plaintiff a GAF score of 60, which represented the clinician's subjective opinion and that plaintiff suffered from "moderate symptoms (e.g., flat affect and circumstantial speech,

occasional panic attacks) OR any moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *DSM-IV-TR*, p. 34.

On May 14, 2010, Dr. Bell saw plaintiff for a "med check" (AR 594). At that time, the doctor noted that plaintiff was stressed about having to find a new place to live in September 2010 and arranged for plaintiff to receive discounted medications (Wellbutrin and Prozac) (AR 594). Plaintiff said the medication was helping him concentrate (AR 594). The doctor found that plaintiff was stable, noting "[q]uick response times, good eye contact, reasonable self-care, came on time" and that plaintiff's "[e]nergy and drive see to be okay" (AR 594).

The ALJ addressed Dr. Bell's opinions as follows:

On October 27, 2009, V. Bell, M.D., a staff psychologist at PineRest Christian Mental Health Services observed no obsessions, panic attacks or psychotic symptoms. Although Dr. Bell diagnosed the claimant with severe but transient depression, he issued a GAF score of 65, indicating only "mild" symptoms (Ex. 8F). By December 2009, the claimant reported some periods of lowered mood, which he attributed to a lack of productive activity; however, he described his emotional functioning as "positive" and he denied severe depressive symptoms (Ex. 9F/6). Dr. Bell reported in a medication review note dated May 14, 2010, the claimant's mental condition was currently stable. In fact, the claimant reported that treating with Prozac and Wellbutrin improved his concentration, energy level and reduced his depression (Ex. 19F/2).

\*     \*     \*

As for [the claimant's] mental condition, the record establishes that he has major depression (Ex 5F). However, there is no evidence that the claimant required sustained psychiatric hospitalizations that lasted longer than a few days. In addition, the record suggests that his treatment, which includes psychiatric medications and therapy, has been relatively effective in controlling his symptoms. Further, the claimant testified that he has not received any psychiatric treatment or been prescribed any psychotropic medication to treat depression since April 2010, suggesting the claimant's symptoms were less severe than alleged. On October 27, 2009, V. Bell, M.D., a staff psychologist at Pine Rest Christian Mental Health Services observed no obsessions, panic attacks or psychotic symptoms. Although Dr. Bell diagnosed the claimant with severe but transient depression, he did issue a GAF score of 65, indicating only "mild" symptoms (Ex. 8F). In a medication review

note dated May 14, 2010, the claimant's mental condition was currently stable. In fact, the claimant reported that treating with Prozac and Wellburton improved his concentration, energy level and reduced his depression (Ex. 19F/2).

Further, his mental health care providers examination findings have generally been unremarkable. At times, his mood was depressed and anxious, but his providers often found that it was stable, or improved. His providers also found, at various times, that his insight was adequate, his judgment was intact, his affect was at times flat; however, his thoughts were logical, and his speech was not pressured or slowed. The claimant frequently denied suicidal thoughts and he reported improved concentration, energy level, and reduced depression when compliant with medication directives (Ex. 19F/2).

\* \* \*

In terms of the opinion evidence, the undersigned gave limited weight to the claimant's treating psychologist. On September 2, 2010, Dr. Bell completed a psychological impairment questionnaire and determined that due to fluctuant depression with suicidal tendencies, irritability and sleeping difficulties, the claimant was markedly limited in his ability maintain regular attendance and complete a normal work week. Due to medication side effects from Prozac and Trazodone, Dr. Bell also determined that the claimant would be incapable of even low stress work and would likely miss more than three days per month of work. Although Dr. Bell has extensive treating relationship with the claimant, his opinions are not consistent with his own findings or the substantial evidence of record. Further, Dr. Bell failed to provide the objective support, which he relied to make his opinion. Therefore, the undersigned assigned limited weight to Dr. Bell's findings (Ex. 17F).

(AR 20- 22).

The Court notes that the "September 2, 2010" questionnaire (Exhibit 17F) referred to by the ALJ is in fact dated April 2, 2010 (AR 578-85). The ALJ's error is understandable given that the date on the questionnaire is hard to decipher. Notwithstanding this clerical error, the ALJ's explanation for giving limited weight to Dr. Bell's opinion is supported by substantial evidence. Accordingly, plaintiff's claim of error should be denied.

### B. The ALJ failed to properly evaluate the plaintiff's credibility.

Plaintiff contends that the ALJ's credibility determination with respect to his mental impairments is not supported by substantial evidence. Plaintiff's Brief at pp. 11-15. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007).

Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

The ALJ's evaluation of plaintiff's credibility provided in pertinent part as follows:

> The claimant alleges an inability to work due to an aortic aneurysm and valvular heart disease, postoperative sternal complications, diabetes mellitus, arthritis in the neck, pain in the left knee, hip and bilateral shoulders, and depression. The claimant alleges that because of his impairments he has difficulty lifting weight greater than 10 pounds, sitting greater than 20 to 30 minutes, standing or walking

greater than 45 minutes, reaching with extended arms or overhead, and kneeling or crawling. The claimant alleges difficulty remembering, concentrating, focusing and understanding.

A review of the medical evidence of record, longitudinal history, and hearing testimony puts the claimant's credibility at issue. The objective findings do not support the extreme limitations alleged by the claimant and reveal that he is not fully credible.

\*       \*       \*

The claimant alleged severe mental impairment, causing significant symptoms including short term memory loss and difficulty concentrating, focusing and understanding. However, the claimant testified that he has not required any psychiatric treatment or been prescribed any psychotropic medication to treat depression in the last year. M. Steve Hall, M.D. offered a diagnosis of major depression with suicidal ideation following inpatient hospital care in October 2009, exacerbated by marital problems and job loss. On examination, the claimant was alert and oriented times three, but his affect was somewhat flat. Dr. Hall noted his lungs were clear and he had a regular heart rate. The claimant also exhibited no clubbing, cyanosis or lower extremity edema (Ex. 5F114/15).

In October 2009, the claimant received a second hospital admission for complaints of depression and alcohol abuse, again exacerbated by life stressors. However, with appropriate treatment, the claimant's symptoms were moderate in severity. C. Smith, M.D. offered a diagnosis of major depressive disorder, recurrent, without psychosis, alcohol dependence, opiate abuse, and issued a Global Assessment of Functioning (GAF) score or 20 on admission and 60 at discharge. The Diagnostic and Statistical Manual of Mental Disorders, 4th Edition, 32 (1994) describes a GAF of 51-60 as having only "moderate" symptoms or "moderate" difficulty in social, occupational, or school functioning. The claimant treated with Prozac and Trazodone, which adequately managed his depression and anxiety (Ex. 6F/7/8/9).

On October 27, 2009, V. Bell, M.D., a staff psychologist at PineRest Christian Mental Health Services observed no obsessions, panic attacks or psychotic symptoms. Although Dr. Bell diagnosed the claimant with severe but transient depression, he issued a GAF score of 65, indicating only "mild" symptoms (Ex. 8F). By December 2009, the claimant reported some periods of lowered mood, which he attributed to a lack of productive activity; however, he described his emotional functioning as "positive" and he denied severe depressive symptoms (Ex. 9F16). Dr. Bell reported in a medication review note dated May 14, 2010, the claimant's mental condition was currently stable. In fact, the claimant reported that treating with

Prozac and Wellbutrin improved his concentration, energy level and reduced his depression (Ex. 19F/2).

*      *      *

As for his mental condition, the record establishes that he has major depression (Ex 5F). However, there is no evidence that the claimant required sustained psychiatric hospitalizations that lasted longer than a few days. In addition, the record suggests that his treatment, which includes psychiatric medications and therapy, has been relatively effective in controlling his symptoms. Further, the claimant testified that he has not received any psychiatric treatment or been prescribed any psychotropic medication to treat depression since April 2010, suggesting the claimant's symptoms were less severe than alleged. On October 27, 2009, V. Bell, M.D., a staff psychologist at PineRest Christian Mental Health Services observed no obsessions, panic attacks or psychotic symptoms. Although Dr. Bell diagnosed the claimant with severe but transient depression, he did issue a GAF score of 65, indicating only "mild" symptoms (Ex. 8F). In a medication review note dated May 14, 2010, the claimant's mental condition was currently stable. In fact, the claimant reported that treating with Prozac and Wellbutrin improved his concentration, energy level and reduced his depression (Ex. 19F/2).

Further, his mental health care providers' examination findings have generally been unremarkable. At times, his mood was depressed and anxious, but his providers often found that it was stable, or improved. His providers also found, at various times, that his insight was adequate, his judgment was intact, his affect was at times flat; however, his thoughts were logical, and his speech was not pressured or slowed. The claimant frequently denied suicidal thoughts and he reported improved concentration, energy level, and reduced depression when compliant with medication directives (Ex. 19F/2).

The claimant also worked after the alleged disability onset date, suggesting that his symptoms were not as severe as alleged. The claimant testified that he returned to work after his alleged onset date; however, he injured himself on the job and had to stop working. Although his earnings were not considered substantial gainful activity, the fact that his impairments did not prevent him from working after the alleged onset dates strongly suggests that they would not currently prevent work (Ex. 6D; Cl. Testimony).

While the claimant testified to a limited lifestyle, the record indicates that he performs a variety of activities without difficulty. He is able to take care of her [sic] personal hygiene, do household chores, prepare simple meals and watch television. He is able drive a car and shop in stores. The claimant testified he lives in a house with his mother and does not have any problems getting along with others. The claimant reported that he associates with his friends and family by way of a

computer. He reported he could shop in stores and did not need anyone to accompany him when he went out. Thus, this testimony, when coupled with the claimant's daily activities, suggests that testimony about performing a variety of activities without difficulty is consistent with the longitudinal medical record indicating only mild to moderate symptoms, and therefore is consistent with the above residual functional capacity and his ability to work.

*     *     *

Elizabeth Martin, the claimant's mother, reported on the claimant's limitations in a third party function report. She reported the claimant is limited when lifting weight greater than 35 pounds, reaching, walking, remembering and getting along with others. To the extent that the opinion of the claimant's mother shows her perception of the claimant's impairments, it does lend credibility to the claimants reported symptoms. However, the undersigned gives this opinion little weight, as it is inconsistent with the record as a whole (Ex. 3E).

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(AR 19-22).

### 1.     The ALJ did not consider plaintiff's ability to afford treatment

In evaluating plaintiff's mental condition, the ALJ found that plaintiff was not entirely credible, in part because he had not received any psychiatric treatment nor been prescribed any psychotropic medication to treat depression since April 2010 (AR 20-21). The ALJ determined that plaintiff's lack of treatment suggested that his symptoms were less severe than alleged (AR 20-21). Plaintiff contends that the ALJ erred by failing to consider his inability to afford treatment. Plaintiff's Brief at pp. 12-13. At the administrative hearing, plaintiff testified that while he saw a therapist and Dr. Bell in 2009, he ran out of insurance in April or May 2010 and has seen no one at Pine Rest since that time (AR 45-46). While plaintiff has not had treatment at Pine Rest since April

or May 2010, plaintiff testified that his primary physician, Dr. Michael Septer, is currently prescribing the same medication as Dr. Bell prescribed (AR 46-47). Plaintiff identified these medications as Trazodone for sleeping and Welbutrin and Prozac for depression (AR 47). Plaintiff stated that he borrows money from his family to pay for the $3.00 Medicaid co-pay for office visits and the $1.00 co-pay for prescription coverage (AR 47).

SSR 96-7p[3] prohibits an ALJ from drawing inferences about a claimant's failure to obtain medical treatment for alleged symptoms without first considering an explanation for that failure:

> [T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner. The explanations provided by the individual may provide insight into the individual's credibility. For example: . . .
>
> > * The individual may be unable to afford treatment and may not have access to free or low-cost medical services. . . .

SSR 96-7p, 1996 WL 374186 at *7-8 (July 2, 1996).

---

[3] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*, 167 Fed.Appx. 496, 498 (6th Cir. 2006).

Here, the ALJ's decision did not address either plaintiff's explanation for his lack of treatment with Pine Rest after April 2010 or plaintiff's subsequent treatment with Dr. Septer after that date. Furthermore, contrary to the ALJ's decision, the record supports plaintiff's testimony that Dr. Septer treated his mental impairments after he stopped treatment at Pine Rest. For example, Dr. Septer increased the dosage of plaintiff's Wellbutrin prescription on July 29, 2011, about two months prior to plaintiff's administrative hearing (AR 671).

Based on this record, the ALJ's credibility determination was not supported by substantial evidence to the extent that the ALJ relied on plaintiff's lack of treatment after April 2010. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate plaintiff's credibility with respect to plaintiff's inability to afford treatment consistent with SSR 96-7p and his treatment with Dr. Septer after April 2010.

### 2. ALJ's citation of GAF scores and reference to plaintiff as "stable"

Plaintiff objects to the ALJ's decision which found plaintiff's "allegations of mental disability inconsistent with a GAF score of 60 and with records that described his mental condition as 'stable'." Plaintiff's Brief at p. 13. Plaintiff contends that the ALJ improperly used his GAF score to discount his credibility, pointing out that the Commissioner has downplayed the significance of GAF scores when evaluating the severity of a claimant's mental impairments. *Id.*

The Sixth Circuit has rejected the proposition that a determination of disability can be based solely on the unsupported, subjective determination of a GAF score. *See Rutter v. Commissioner of Social Security*, No. 95–1581, 1996 WL 397424 at *2 (6th Cir. July 15, 1996). A GAF score "may have little or no bearing on the subject's social and occupational functioning."

*Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 511 (6th Cir.2006). In addition, "[t]he GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorders listings." *Oliver v. Commissioner of Social Security*, 415 Fed. Appx. 681, 684 (6th Cir. 2011), quoting Response to Comment, Final Rules on Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746, 50764–65 (Aug. 21, 2000). As the Sixth Circuit explained in *Kennedy v. Astrue*, 247 Fed. Appx.761 (6th Cir.2007):

> GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning.

*Kennedy*, 247 Fed. Appx. at 766. In short, there are no "statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." *Kornecky*, 167 Fed. Appx. at 511. Rather, "the determination of disability must be made on the basis of the entire record and not on only some of the evidence to the exclusion of all other relevant evidence." *Hardaway v. Secretary of Health & Human Services*, 823 F.2d 922, 927 (6th Cir.1987) (citation omitted).

In this case, however, the ALJ did not make the disability determination based solely on plaintiff's GAF scores. Rather, she accepted the GAF scores assigned by Dr. Bell as his subjective rating of plaintiff's condition and improvement (AR 20-21). In reviewing the GAF scores, the ALJ observed an inconsistency between Dr. Bell's October 27, 2009 diagnosis that plaintiff suffered from "severe but transient depression" and the doctor's concurrent assignment of a GAF score of 65, which indicated only "mild" symptoms (AR 20). Finally, it appears that the ALJ's reference to plaintiff's mental condition as "currently stable" on May 14, 2010, was cited to show that in Dr. Bell's subjective assessment, plaintiff was suffering only mild symptoms on October 27,

2009, and that these symptoms were "currently stable" as of May 14, 2010. Plaintiff's claim of error should be denied.

### 3. Plaintiff's daily activities

Plaintiff contends that the ALJ improperly found that plaintiff's ability to perform various daily activities, i.e., taking care of his personal hygiene, doing household chores, preparing simple meals, watching television, driving, shopping and associating with others, was evidence of his ability to perform full-time competitive employment. Plaintiff's Brief at p. 14. As discussed, *supra*, the ALJ found that plaintiff's daily activities also included use of a computer to associate with friends and family, and plaintiff's statements that he does not have any problems getting along with others, that he can shop in stores, and that he does not need anyone to accompany him when he goes out (AR 21).

While plaintiff may not have engaged vigorously in all of these activities, such endeavors are not indicative of an invalid, incapable of performing sedentary types of work. *See, e.g., Pasco v. Commissioner of Social Security*, 137 Fed. Appx. 828, 846 (6th Cir. 2005) (substantial evidence supported finding that plaintiff was not disabled where plaintiff could "engage in daily activities such as housekeeping, doing laundry, and maintaining a neat, attractive appearance" and could "engage in reading and playing cards on a regular basis, both of which require some concentration") (footnote omitted); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (a claimant's ability to perform household and social activities on a daily basis is contrary to a finding of disability); *Gist v. Secretary of Health and Human Services*, 736 F.2d 352, 358 (6th Cir. 1984) (a claimant's capacity to perform daily activities on a regular basis will militate against a finding of disability). Accordingly, plaintiff's claim of error should be denied.

### C. The ALJ relied on flawed vocational expert testimony.

Plaintiff contends that the ALJ erred because the hypothetical question posed to the vocational expert (VE) did not accurately reflect plaintiff's condition. Specifically, plaintiff contends that the question posed did not refer to his need to miss more than three days of work per month due to his impairments and that he had only "moderate" limitations in concentration, persistence and pace. Plaintiff's Brief at pp. 15-16. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990). Because the purpose of the hypothetical question is to elicit testimony regarding a claimant's ability to perform other substantial gainful activity that exists in the national economy, the question does not need to include a listing of the claimant's medical diagnosis. "[A] hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb*, 368 F.3d at 632.

Here, the ALJ found that plaintiff had the RFC to perform a limited range of sedentary work which avoided overhead reaching, climbing ladders or scaffolds, kneeling, and exposure to unprotected heights, dangerous moving machinery, and occupational vibrations (AR 17-

18). The RFC further limited plaintiff to performing "simple tasks and having occasional interaction with the public" (AR 17-18). Plaintiff contends that the ALJ's hypothetical question limiting him to "simple tasks" and "occasional interaction with the public" was in error. Plaintiff relies on *Ealy v. Commissioner of Social Security*, 594 F.3d 504, 516 (6th Cir. 2010), for the proposition that the hypothetical question limiting a claimant to "simple, repetitive jobs in a non-public work setting did not adequately account for the moderate limitations in concentration, persistence, or pace found by the ALJ." Plaintiff's Brief at p. 16.

Plaintiff's contention is without merit. The ALJ's determination that plaintiff had moderate limitations in concentration, persistence or pace were part of the ALJ's evaluation of the "paragraph B" criteria under Listing 12.04 performed at the third step of the sequential process. This was not a part of the ALJ's RFC determination. As an initial matter, the ALJ made inconsistent findings with respect to this limitation, stating at the beginning of the third paragraph (AR 17) that "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties" and then concluding the paragraph with the sentence, "[t]he undersigned finds the claimant has mild limitation in this area." For purposes of this appeal, however, even if the Court assumed that plaintiff had moderate limitations, he would not meet the requirements of Listing 12.04.

After making the determination that plaintiff did not meet the "paragraph B" requirements of Listing 12.04, the ALJ explicitly stated that the "paragraph B" findings were not part of the RFC determination:

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental

21

disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(AR 17).

The ALJ relied in part on SSR-96-8p, which provides in pertinent part that:

The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

SSR 96-8p, 2996 WL 374184 at *4.

In addition, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A. explains that:

Individuals who have an impairment with a level of severity which does not meet the criteria of the listings for mental disorders may or may not have the residual functional capacity (RFC) which would enable them to engage in substantial gainful work activity. The determination of mental RFC is crucial to the evaluation of an individual's capacity to engage in substantial gainful work activity when the criteria of the listings for mental disorders are not met or equaled but the impairment is nevertheless severe.

RFC may be defined as a multidimensional description of the work-related abilities which an individual retains in spite of medical impairments. RFC complements the criteria in paragraphs B and C of the listings for mental disorders by requiring consideration of an expanded list of work-related capacities which may be impaired by mental disorder when the impairment is severe but does not meet or equal a listed mental disorder.

*See also, Furst v. Commissioner of Social Security*, No. 99-3581, 2000 WL 282909 at *2 (6th Cir.

March 12, 2000) (the findings set forth in a PRTF as to whether a claimant meets the requirements

of a listed impairment "are solely relevant to the issues of whether [the claimant] had a severe

impairment and whether her condition was equivalent to any of the impairments that are listed in

Appendix A to the regulations").

As discussed, *supra*, the ALJ's RFC assessment explicitly limited plaintiff to "simple

tasks and occasional interaction with the public" (AR 17-18). Limiting a claimant to "simple,

repetitive tasks" or "simple, routine tasks" addresses the claimant's functional limitations in

concentration, persistence and pace. An ALJ's use of terms like "simple," "routine," and

"repetitive" is essentially shorthand for the types of duties involved in unskilled work, which is

defined in the regulations as follows:

> Unskilled work is work which needs little or no judgment to do simple duties that
> can be learned on the job in a short period of time. The job may or may not require
> considerable strength. For example, we consider jobs unskilled if the primary work
> duties are handling, feeding and offbearing (that is, placing or removing materials
> from machines which are automatic or operated by others), or machine tending, and
> a person can usually learn to do the job in 30 days, and little specific vocational
> preparation and judgment are needed. A person does not gain work skills by doing
> unskilled jobs.

20 C.F.R. §§ 404.1568(a) and 416.968(a). *See Allison v. Apfel*, No. 99-4090, 2000 WL 1276950

at *4 (6th Cir. Aug. 30, 2000) ("We believe that the ALJ's qualification that [the claimant] was

limited to simple, repetitive, and routine tasks, within the category of light work, simply means that

[the claimant] is limited to unskilled light work. Indeed, the Social Security Administration

regulations define unskilled work as 'work which needs little or no judgment to do simple duties that

can be learned on the job in a short period of time' and gives the examples of 'handling, feeding and

offbearing' - in other words, simple, repetitive tasks. 20 C.F.R. § 404.1568(a)."). *See, e.g., Smith*

*v. Halter*, 307 F.3d 377, 378-79 (6th Cir. 2001) (a hypothetical question limiting the claimant to jobs that are "routine and low stress, and do not involve intense interpersonal confrontations, high quotas, unprotected heights, or operation of dangerous machinery" appropriately addressed the limitations of the claimant who "often" suffered problems with concentration, persistence or pace resulting in the failure to complete tasks in a timely manner). The restrictions included in the ALJ's hypothetical question accurately communicated plaintiff's mental limitations to the VE, and therefore plaintiff's claim of error should be denied.

## IV. Recommendation

For the reasons discussed, I respectfully recommend that this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate plaintiff's credibility. As part of this re-evaluation, the ALJ should address plaintiff's inability to afford treatment and Dr. Septer's treatment of plaintiff's mental condition after April 2010.


Dated: February 3, 2014                    /s/ Hugh W. Brenneman, Jr.
                                           HUGH W. BRENNEMAN, JR.
                                           United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).